IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **HD SILICON SOLUTIONS LLC,**<br>*Plaintiff*<br><br>-vs-<br><br>**MICROCHIP TECHNOLOGY INC.,**<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **W-20-CV-01092-ADA** |

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

Before the Court is Defendant Microchip Technology Inc.'s ("Microchip") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (the "Motion"). ECF No. 18. Plaintiff HD Silicon Solutions LLC ("HDSS") filed its Response (ECF No. 29) and Microchip its Reply (ECF No. 35). Microchip requests that the Court transfer this case to the Northern District of California ("NDCA"). ECF No. 18 at 1. After considering the parties' briefs and the relevant law, the Court **GRANTS** Microchip's Motion to Transfer for the reasons set out below.

### I. FACTUAL BACKGROUND

Plaintiff HDSS filed this lawsuit accusing Microchip of infringing U.S. Patent Nos. 7,260,731 (the "'731 Patent"); 7,870,404 (the "'404 Patent"); 7,810,002 (the "'002 Patent"); 6,748,577 (the "'577 Patent"); 7,154,299 (the "'299 Patent"); 7,302,619 (the "'619 Patent"); and 6,774,033 (the "'033 Patent") (collectively, the "Asserted Patents"). HDSS also identifies the following products in its Complaint: Microchip's PIC24 family of microcontrollers with eXtreme Low-Power or XLP technology (ECF No. 1 ¶¶ 16, 31); Microchip's PIC32MZ DA, PIC 32MZ EF, and PIC32MK microcontrollers (ECF No. 1 ¶ 109); Microsemi PolarFire FPGAs (ECF No. 1, ¶¶

91, 127); and SAM L11 microcontrollers with ARM TrustZone technology (ECF No. 1 ¶ 52) (collectively, the "Accused Products").

Plaintiff HDSS is a limited liability company organized and existing under the laws of the State of Texas, with a principal place of business in the Southern District of California. ECF No. 29 at 1. HDSS is managed by Fahim Aftab, who resides in and conducts HDSS's business from the Southern District of California. *Id.*

Defendant Microchip is a Delaware corporation with its headquarters in Chandler, Arizona. ECF No. 18 at 3. Microchip also states that it has a significant presence in the NDCA. *Id.*

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S.*

*Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.*, 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest*

*NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Neither party contests that venue is proper in the NDCA and that this case could have been brought there. This Court finds that venue would have been proper in the NDCA had it been originally filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A. The Private Interest Factors

#### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern

patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). Nevertheless, "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

Microchip affirms that it "researches, designs, develops, and tests the Accused Products largely in the NDCA or Arizona, not in Texas." ECF No. 18 at 9. Microchip provides several declarations to support its position. *See* Greene Decl., ECF No. 18-4 ¶ 5 (declaring 17 out of 28 engineers knowledgeable about the design and functionality of the PolarFire products are located in San Jose, California); Chen Decl., ECF No. 18-1 ¶ 5 (declaring the PIC24 microcontrollers were designed, developed, verified, and tested in Chandler, Arizona and that knowledgeable engineers about the design are located there); Das Decl., ECF No. 18-2 ¶ 9 (declaring the microcontrollers were designed and developed in the NDCA with support from France and that most knowledgeable engineers are in San Jose, California). Microchip further argues that most

named inventors of the Asserted Patents are located in the NDCA, while none are located in the WDTX. *See* Walsh Decl., ECF No. 18-5 ¶ 10. Last, Microchip points to the location of HDSS, stating it "conducts all of its business in and from California and maintains all of its records and evidence in California." ECF No. 35 at 2.

HDSS counters that Microchip's documentary evidence is located almost entirely on servers in Arizona. ECF No. 29 at 9. HDSS argues that the product, financial, marketing, and technical documents for PIC24 products are located in Arizona. ECF No. 9; *see* Chen Depo., ECF No. 29-5 at 59:20–60:9. HDSS similarly points to the PIC32 and SAM L11 products, stating that the relevant documents are stored in Arizona and Oregon. ECF No. 29 at 9; *see* ECF No. 29-6 at 4 (stating documents and servers for PolarFire and PIC32 products are located in Chandler); Greene Depo., ECF No. 29-7 at 110:17–111:4 (answering that PolarFire documents would be in San Jose or Chandler, but unsure of which).

Microchip's arguments are largely incomplete. Microchip outlines the location of its general presence, pointing to where product engineers and inventors are located. But the argument is misplaced. Instead, this factor looks to where "the documents and physical evidence relating to" the case are located. *Volkswagen II*, 545 F.3d at 316; *see also In re Apple Inc.*, 979 F.3d at 1339 ("[t]his factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence"). Thus, Microchip hopes the Court will infer that any relevant documents are therefore located in the NDCA. HDSS points to the location of documents with much better particularity. When comparing the evidence provided by both parties, it appears that the great majority of relevant technical, marketing, and financial documents are located in Chandler, Arizona. For a proposed transfer to the NDCA, this evidence is irrelevant. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) ("The

comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."). Some evidence confirms that various servers used for hosting certain documents about the PolarFire products are located in San Jose. ECF No. 29-6 at 4. Notably, any evidence of documents maintained in the WDTX is entirely absent.

Plaintiff's documents are located in the NDCA, but Microchip fails to specify what documents Plaintiff holds that are particularly relevant. ECF No. 18 at 10 ("both executives for HDSS appear to reside in California, suggesting that relevant HDSS witnesses and documents are located in California, not Texas"). Vague assertions are insufficient to meet the "clearly more convenient" standard. Moreover, as previously stated, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Apple Inc.*, 979 F.3d at 1340. Here, a portion of documents regarding one of four Accused Products are held in the NDCA. Accordingly, the Court finds that this factor weighs only slightly in favor of transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

For this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc,* 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P.

45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu*, 2021 U.S. App. LEXIS 22723, at *10 ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). *But see In re Apple*, 581 F. App'x 886, 891 (Fed. Cir. 2014) (Bryson, J., dissenting) (collecting cases where courts required the movant to show witnesses would be unwilling to travel to the transferor district).

Microchip identifies six inventors of the Asserted Patents that reside in the NDCA. Microchip further points to Intellectual Ventures, a prior assignee of the Asserted Patents with an office in the NDCA. ECF No. 18 at 11. Last, Microchip highlights nine named inventors of relevant prior art in the NDCA. ECF No. 18 at 7, 11. Microchip states it has reached out to many of the non-parties, "but none have been willing to speak with Microchip about the case, so they will need to be subpoenaed." ECF No. 35 at 3.

HDSS argues that Microchip failed to identify *unwilling* witnesses, and that as a result, this factor is neutral. But the Federal Circuit rejects this approach. *See In re Hulu*, 2021 U.S. App. LEXIS 22723, at *10 (favoring transfer even without a showing of unwillingness for each witness). HDSS further contests Microchip's list of inventors, stating Microchip fails to articulate why the NDCA inventors are more important than the inventors located outside of both jurisdictions. HDSS also states that it acquired the asserted patents from Intellectual Ventures

and possesses the same information, rendering anything from Intellectual Ventures duplicative. Concerning the prior art inventors, HDSS argues that Microchip fails to suggest any intent to rely on such witnesses, amounting to a list of cherry-picked individuals residing in the NDCA. To support maintenance of the suit in the WDTX, HDSS focuses on Microchip's Texas employees that HDSS may call as adverse witnesses at trial. These witnesses, according to HDSS, include design-team members (four in Austin), customer-support-team members (five in Dallas), an individual responsible for inbound marketing (in Copper Canyon), and 16 Austin-based salespeople that sell the Accused Products. ECF No. 29 at 12. Finally, HDSS addresses over two dozen Texas distributors that sell the Accused Products and have evidence concerning sales and revenue. *Id.*

The Court agrees that Intellectual Ventures has no bearing on this analysis. Should it have any noncumulative evidence, it would come from Washington, where it is based and where the relevant employee resides. Thus, the Court turns its attention to the inventors of the Asserted Patents and prior art in the NDCA, along with the Microchip employees and distributors in Texas. In contrast with HDSS's allegations, Microchip presents several declarations indicating "[t]he employees in Microchip's Austin office do not have any relevant, non-cumulative, or non-public information about the Accused Products." ECF No. 18 at 12. While the Court has absolute subpoena power over the Texas employees, such employees seem to have a rather remote relationship to the facts of this case. Furthermore, any information HDSS seeks from the Texas distributors, namely evidence concerning sales volume and revenue, would likely be available from Microchip in the discovery process. Therefore, the Microchip Texas employees and Texas distributors are given little weight. In contrast, the NDCA hosts several individuals that have

indicated an unwillingness to help or failed to respond to requests for information entirely. Thus, the Court finds that this factor favors transfer.

### *iii. The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Sept. 27, 2021). The Federal Circuit has indicated that time is a more important metric than distance. *Id.* When considering this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

Recently, the Federal Circuit recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)…" *In re Hulu, LLC*, No. 2021-142, 2021 U.S. App. LEXIS 22723, at *13 (Fed. Cir. Aug. 2, 2021). But since that opinion, the Federal Circuit has reprimanded this Court for reliance on decades of similar jurisprudence in the Fifth Circuit and elsewhere. *Compare In re Juniper Networks, Inc.*, No. 2021-160, --- F.4th ----, 2021 WL 4343309, at *4 (Fed. Cir. Sep. 24, 2021) (holding that the witness convenience factor is *not* attenuated at all when the witnesses are party employees), *with Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) (according

little weight to the convenience of party employee witnesses), *and Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (same), *and* 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.").

Microchip argues that both party and willing third-party witnesses overwhelmingly favors transfer to the NDCA, citing several declarations in support. *See* Section III.A.i, *supra*. Microchip further states that "[t]he employees in Microchip's Austin office do not have any relevant, non-cumulative, or non-public information about the Accused Products." ECF No. 18 at 12.

HDSS counters that this factor should only weigh slightly in favor of transfer. ECF No. 29 at 13. HDSS mitigates Microchip's arguments, stating that HDSS's only likely party witness does not live in either jurisdiction, that most of Microchip's possible party witnesses are abroad or in Arizona, and that the convenience of party employees should be entitled less weight.

As previously stated, the Federal Circuit now takes the position that this Court should not accord the convenience of party witnesses less weight. *See In re Juniper Networks, Inc.*, 2021 WL 4343309, at *4. Because the majority of party witnesses and potentially willing third-party witnesses reside in the NDCA, with no relevant witnesses in the WDTX, the Court finds that this factor weighs strongly in favor of transfer.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

Both parties agree that this factor is neutral. The Court agrees.

## B. The Public Interest Factors

### *i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion

between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Specific to the WDTX and NDCA, and without providing any statistical support or citations, the Federal Circuit recently stated that the districts "show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks, Inc.*, 2021 WL 4343309, at *6. Regardless, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *In re Genentech, Inc.*, 566 F.3d at 1347.

Microchip argues that this factor is neutral, and that even if it weighed against transfer, it should be given the least weight. ECF No. 18 at 14. HDSS points to a footnote in Mirochip's brief, finding the average trial time since 2018 weighs against transfer.

This Court finds that it has a much faster average time to trial. But this Court need not instigate a lengthy discussion regarding this factor as it has little impact on the end result. The Court finds this factor to weigh against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). As the Federal Circuit has instructed, the focus is on where the events forming the basis for infringement occurred and not the parties' generalized connections to the forum. *In re Juniper Networks, Inc.*,

2021 WL 4343309, at *5. Additionally, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *Id.* (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Microchip argues that the inventors reside in and developed the Asserted Patents in the NDCA. ECF No. 18 at 13–14. Microchip also states that the fact that HDSS incorporated in Texas shortly before filing the Complaint is insignificant in this analysis. HDSS disagrees, maintaining that it is a Texas LLC while Microchip is headquartered in Arizona. ECF No. 29 at 14. HDSS also counters Microchip's California presence with Microchip's design, engineering, marketing, customer-service, and sales work in Texas. *Id.*

To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 2021 WL 4343309, at *4–5 (Sept. 24, 2021). The most relevant considerations are therefore where the design, development, and sale of the accused products occurred.

Few, if any, of the events giving rise to the infringement claim occurred in the WDTX, and HDSS's recent and limited presence in this district is insufficient. *See id.* (finding that Plaintiff's status as a Texas-based entity was not entitled to much weight as its presence was recent and relatively insubstantial). All else being equal, the development and presence of relevant engineers for the PolarFire and SAM L11 microcontrollers in the NDCA shifts the center of gravity of this action to the NDCA. *See id.* at *7. Therefore, this factor weighs in favor of transfer.

### iii. Familiarity of the Forum with the Law That will Govern the Case

Both parties agree that this factor is neutral. The Court agrees.

*iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. The Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Slightly in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Strongly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three of the factors are neutral. Four factors favor transfer to the NDCA, ranging from slightly to strongly. Only one factor weighs against transfer. Defendant Microchip has carried its burden to show that transfer to the Northern District of California is *clearly* more convenient than the venue chosen by Plaintiff.

Defendant's Motion is therefore **GRANTED**. The Clerk of the Court shall transfer this case to the United States District Court for the Northern District of California for all further proceedings. After transfer, the Clerk shall close the case.

SIGNED this 25th day of October, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE